MULHOLLAND v. McKEEVER (two cases).

(Supreme Court, Appellate Division, Second Department.   October 4, 1901.)

HIGHWAYS—LIABILITY OF PERSONS CAUSING OBSTRUCTIONS—EVIDENCE—SUFFI-
CIENCY.

    A steam roller belonging to defendant was left unguarded in the
street, causing plaintiffs' horse to take fright, resulting in their injury.
Such roller had been leased from defendant, and was started towards
F., when it broke down.   Defendant was to furnish an engineer with the
roller.   A messenger, on the morning the roller started, came to de-
fendant with a letter stating that he was an engineer and would take
the roller to F.   Defendant sent a man with him, and after the break-
down sent another engineer with the machine, being afraid the first
engineer did not understand the roller.   *Held* sufficient to sustain a
finding that defendant was in possession of the roller at the time of the
accident, making him liable for the injury.

Appeals from trial term, Queens county.

Consolidated actions by Thomas H. Mulholland and by Mary J.
Mulholland against Edward J. McKeever.   From judgments in fa-
vor of each of the plaintiffs, and orders denying defendant's motion
for a new trial, he appeals.   Affirmed.

Argued before GOODRICH, P. J., and WOODWARD,
HIRSCHBERG, JENKS, and SEWELL, JJ.

Henry P. Keith, for appellant.
Henry A. Montfort, for respondents.

HIRSCHBERG, J.   The defendant appeals from judgments en-
tered in the two actions, which were tried together and which were
based upon his alleged negligence.   The plaintiff in one of the ac-
tions, Thomas H. Mulholland, and his wife, Mary J. Mulholland,
the plaintiff in the other, driving together upon a public highway
at Jamaica, borough of Queens, on June 14, 1899, were injured by
reason of the horse taking fright from a large steam roller belong-
ing to the defendant and left unguarded upon the street.   Upon the
question of care, the evidence was conflicting; but there was suffi-
cient to justify a finding by the jury that the roller was left unflagged
and unattended, with no precaution taken to warn drivers upon the
highway of its presence in time to enable them to control their horses
and avert danger.   There was also evidence to establish the fact
that the appearance of the machine was calculated to frighten horses,
and also the fact that the plaintiffs were wholly free from blame.

The question strenuously litigated before the jury, and chiefly
urged on this appeal, relates to the custody of the roller at the time
of the accident; the defendant claiming that it was not then in his
possession or control, either directly or through a servant.   Here,
too, the evidence was conflicting; but it was fairly submitted to the
jury and the conclusion reached by them adversely to the defendant
should not be disturbed.   It cannot be said, as matter of law, that
the defendant was not in charge of the roller at the time.   The own-
ership of the roller by the defendant is undisputed.   It was used in
his contract work shortly before the accident.   One Bouker had
engaged to furnish to the department of highways for the borough

three steam rollers, inclusive of engineers to operate them, and he had arranged with the defendant for a lease of the one in question to be used in fulfilling that engagement. The department designed using the rollers in resurfacing macadam roads, and the roller in question was started towards Flushing on the morning of June 14th, but had broken down almost at the start, and the fire had been drawn some hours before the accident. If at the time the delivery of the roller and the engineer in charge had been made by the defendant to Bouker or to the city, so that the defendant had no lawful right to interfere with or control it, it may well be that he was free from liability. Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, and cases cited. But there was evidence from which the jury could conclude that the defendant was to deliver the machine at Flushing, and that he was engaged in so doing at the time of the occurrence complained of; and, of course, under such circumstances his liability is clear.

The defendant testified that about 8 o'clock in the morning of the 14th a messenger came to him from the department with a letter; the letter stating that the messenger was an engineer, and that he would take the roller to Flushing and work it there. This letter the defendant had destroyed. Both the defendant and Bouker testified that the former was to furnish his engineer with the roller, and that the department had the same understanding; and no explanation was made why under such circumstances the city should voluntarily furnish an engineer. Moreover the defendant testified that:

"I asked him [the engineer] if the highway department had sent any man to take the roller over there,—to keep the flag on it; and he said he didn't have any man with him; and I said, 'I will see that the men go with you with the flags.'"

He further testified:

"A man that worked for me went with the flags,—Frank Diester. * * * I did send Frank Diester, and told Sigretto, the subcontractor, to send a man. They telephoned me in the afternoon that some belt had broke, and they had to draw the fire, and I would have to send a man out there to repair it. * * * I tore the message up which came from the city. It was written on the regular letter head from the highway department. A messenger came with this letter, directing me to send it to Flushing. * * * I did not pay that man. I asked my other engineer. I sent him with the breakdown,—sent him along with it. I wouldn't recognize the other man, as I was afraid to trust the machine. In fact, I sent my machine with a man, after he broke down. * * * The engineer that ran this machine on Cypress avenue was in my employ on the 14th of June all day long. I paid him for his work on that day, when the machine broke down. I sent him from Wallabout to take charge of it again. That is the afternoon of the 14th. They broke down, and I was afraid that other engineer didn't understand the roller."

There is other evidence bearing on the question under consideration; but it is very plain from these extracts that the defendant's evidence alone is abundantly adequate to support the theory that he was to deliver the roller at Flushing, that he fully recognized his obligation in that regard, that he was actually engaged in making such delivery at the time of the accident, that the roller was therefore in his possession and under his control, and as a necessary consequence that he was liable for the negligence complained of.

No error was committed upon the trial, and the judgments and orders should be affirmed.

Judgments and orders affirmed, with costs.  All concur.